IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EUGENE ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-4187-D |
| VS. | § | |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The court revisits this case to decide whether plaintiff has pleaded a plausible claim under the Texas Whistleblower Act ("Whistleblower Act"). Concluding that he has not, the court grants defendant's Fed. R. Civ. P. 12(b)(6) motion and dismisses the claim with prejudice.

I

Because this case is the subject of a prior memorandum opinion and order, *see Robinson v. Dallas County Community College District*, 2015 WL 1879798 (N.D. Tex. Apr. 24, 2015) (Fitzwater, J.) ("*Robinson I*"), the court will recount only the background facts and procedural history that are pertinent to this decision. Plaintiff Eugene Robinson ("Robinson") brings this action against defendant Dallas County Community College District ("District"), alleging that the District violated the Whistleblower Act and his First Amendment rights (remediable via 42 U.S.C. § 1983) when it terminated his employment as a foreign language lab coordinator. In *Robinson I* the court held, *inter alia*, that Robinson

had failed to plead a plausible Whistleblower Act claim, but it granted Robinson leave to replead. *See Robinson I*, 2015 WL 1879798, at *2-3. Robinson thereafter filed an amended complaint, and the District moves anew to dismiss his Whistleblower Act claim.

According to the amended complaint,[1] Robinson worked as a foreign language lab coordinator at Brookhaven College, a college in the District. He reported to one or more members of the District's Board of Trustees ("Board") via email that the District, through its Early College program, was violating Texas law by spending community college district tax revenue to support programs and students of public independent school districts (such as early college high school/dual credit programs, in which high school students simultaneously earn college and high school credit). Robinson alleges that the District used resources and money for the benefit of students of independent school districts in Dallas County, not for the benefit of tuition-paying students of the District; he complained that the independent school districts were being inappropriately subsidized by the District through the Early College program; he specifically expressed the belief that $4,324.03 in funds budgeted for student assistant salaries had been illegally diverted into the Early College program; after he expressed his opinions, the District terminated his employment; his former dean at

---

[1]In deciding the District's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Robinson, accepts all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Brookhaven College refused to allow him to substitute teach a course, even though he was qualified, because he had reported wrongful conduct to Board members; and, since his termination, he has applied for numerous positions within the District for which he was qualified and has never been interviewed.

Robinson originally sued the District to recover under 42 U.S.C. § 1983 for violating his First Amendment rights; for breach of contract; and for violating the Whistleblower Act. In *Robinson I* the court granted the District's motion to dismiss Robinson's claims for breach of contract and violation of the Whistleblower Act, concluding that Robinson failed to allege facts sufficient to state plausible claims. *Robinson I*, 2015 WL 1879798, at *1-2. Regarding the Whistleblower Act claim, the court held that Robinson had "not plausibly pleaded that he reported a violation of the law 'to an appropriate law enforcement authority[.]'" *Id.* at *2 (quoting Tex. Gov't Code Ann. § 554.002(a) (West 2012)). Robinson has filed an amended complaint, and the District again moves to dismiss his Whistleblower Act claim under Rule 12(b)(6). Robinson opposes the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the District's motions, Robinson's amended complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

- 3 -

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The District's motion to dismiss Robinson's Whistleblower Act claim presents the question whether the amended complaint plausibly pleads that Robinson had an objective good faith belief that he had reported a violation of law to an "appropriate law enforcement authority."

A

"The Whistleblower Act prohibits a state or local governmental entity from taking adverse personnel action against 'a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.'" *Tex. Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 613-14 (Tex. 2014) (quoting Tex. Gov't Code Ann. § 554.002(a) (West 2012)).

> [A] report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law.

Tex. Gov't Code Ann. § 554.002(b).  To satisfy the good-faith belief requirement, "the plaintiff must reasonably believe the reported-to authority possesses what the statute requires: the power to (1) regulate under or enforce the laws purportedly violated, or (2) investigate or prosecute suspected criminal wrongdoing." *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Gentilello*, 398 S.W.3d 680, 682 (Tex. 2013)*.*  The good-faith belief requirement "has both subjective and objective elements." *Id.* at 683.  The employee must have a subjective belief that the reported-to entity qualifies as "an appropriate law enforcement authority," and that belief must be objectively "reasonable in light of the employee's training and experience." *Okoli*, 440 S.W.3d at 614 (quoting *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002)).  The objective element is satisfied only "if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a

violation of law was an appropriate law-enforcement authority." *Id.* (quoting *Needham*, 82 S.W.3d at 320-21). Compliance with the Act is jurisdictional. *Gentilello*, 398 S.W.3d at 682 (referring to "jurisdictional evidence" and "jurisdictionally sufficient evidence").

### B

Robinson alleges that he made his reports to individual members of the Board of Trustees of the very entity that he was accusing of wrongdoing. He maintains that the Board is "an appropriate law enforcement authority" because the Board has control over the District's funding, the District has a private police force, and he was aware of four previous District investigations when he reported the alleged wrongful conduct: (1) a 2003 internal investigation authorized by the District of a college vice president for illegally selling student visas and for theft of a college laptop computer, which was initiated only after the FBI arrested the vice president; (2) a 2010 investigation initiated by a District police chief of an unauthorized discharge of a weapon on campus; (3) a 2012 investigation ordered by the Board of a District police officer for illegally charging $1,000 per month on a District credit card totaling approximately $16,800; and (4) a 2014 "Board of Trustee investigation uncovering wrongdoing" by a college president. Am. Compl. ¶ 27.

Even with these added allegations, Robinson has not pleaded sufficient facts to plausibly establish that he had an objective good faith belief that the *individual trustees*—or even the District's Board of Trustees as a collective body—had "authority to regulate under or enforce" the Texas Education Code ("Education Code"), which is the law Robinson relied on to report that the District was acting illegally. *See Gentilello*, 398 S.W.3d at 685. This

- 6 -

is so because there is no basis to draw a reasonable inference that a reasonably prudent employee in Robinson's position—someone who worked for the District in various college teaching capacities for 23 years—would have believed that the individual Board members or the Board had "authority to regulate under or enforce" the Education Code.  *Id.; see also Okoli*, 440 S.W.3d at 614 (discussing the good-faith belief requirement).

Robinson alleges in his amended complaint that the Board's "ultimate control over the funding of [District] programs" made the Board "an appropriate law enforcement authority" to whom he could report the District's alleged violations of the Education Code. Am. Compl. ¶ 30.  This allegation is unchanged from Robinson's complaint.  The court has already held in *Robinson I* that this allegation is insufficient to enable the court to draw the reasonable inference that the Board qualifies as an appropriate authority.  *See Robinson I*, 2015 WL 1879798, at *2 (quoting *Gentilello*, 398 S.W.3d at 685 (citations omitted) (concluding that the "Board's obligation to follow the Texas Education Code 'does not equate to its having authority to 'regulate under or enforce' those provisions as to itself'")).

Robinson also asserts that his knowledge of four previous District investigations makes his belief that the Board was "an appropriate law enforcement authority" objectively reasonable.  None of the alleged investigations, however, pertained to *the Education Code* or any similar code or law.  It would be objectively unreasonable for someone in Robinson's position to have believed based on these investigations—investigations regarding unauthorized charging of a District credit card, illegal sales of student visas, theft of a laptop, and unauthorized discharge of a weapon on campus—that the Board had "authority to

regulate under or enforce" *the Education Code*.

The alleged District investigations likewise do not provide a basis for the court to draw a reasonable inference that Robinson had a good faith belief that the Board had authority "to enforce, investigate, or prosecute violations of law *against third parties outside of the entity itself*." *Gentilello*, 398 S.W.3d at 686 (emphasis added).

> [F]or an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status.

*Id.* The only targets of the alleged investigations specifically mentioned in the amended complaint are District employees (a District president, a District vice president, and a District police officer). It would be objectively unreasonable for someone in Robinson's position to believe, based on isolated investigations of District employees for various alleged crimes, that the Board had authority to enforce the Education Code against non-District employees.

The alleged District investigations only allow an objectively reasonable inference that the Board had the power to investigate internally and to take disciplinary action against its employees. The Supreme Court of Texas has held, however, that "[i]t is not enough that an employer 'has authority to regulate and investigate its employees' conduct only to carry out its internal disciplinary process procedures.'" *Gentilello*, 398 S.W.3d at 687 (quoting *Needham*, 82 S.W.3d at 320). In three of the four investigations, Robinson only asserts that

the Board, District, or District police chief internally investigated wrongful conduct. Regarding the final investigation, Robinson asserts that the Board conducted an investigation, and, after uncovering wrongdoing by a District president, told the president that "he must retire or he would face prosecution." Am. Compl. ¶ 27. To seek prosecution, the Board would have to have referred its investigatory findings elsewhere. The limited power to refer suspected wrongdoing is insufficient to enable the court to draw the reasonable inference that Robinson could have believed in objective good faith that the Board had "authority to regulate under or enforce" the relevant law. *See Gentilello*, 398 S.W.3d at 684, 687 (citing *State v. Lueck*, 290 S.W.3d 876, 885-86 (Tex. 2009)) (stating that the Supreme Court of Texas previously held in *State v. Lueck* that a Texas Department of Transportation employee, who reported alleged wrongdoing to his supervisor via email, could not have believed in good faith that his supervisor was an appropriate law enforcement authority, "noting that the email itself belied the employee's good-faith belief by recognizing the supervisor would have to forward the report elsewhere for prosecution"). Robinson (who likewise reported the alleged wrongdoing via email) does not allege facts that enable the court to draw the reasonable inference that he objectively believed that the Board could prosecute this president or anyone else. *See id.*

Nor does the existence of the District's private police force alter the court's conclusions. The amended complaint only asserts that the District has a private police force, and that, on one occasion, a District police chief ordered an investigation into the unauthorized discharge of a weapon on campus. These facts do not provide a basis for the

court to draw the reasonable inference that Robinson had an objective good faith belief that the Board had "authority to regulate under or enforce" the Education Code.  This is especially true considering the allegation of the amended complaint that Robinson believed that "[n]o police force would be in a position" to initiate an investigation or otherwise enforce the Education Code.  Am. Compl. ¶ 29.  Robinson does not cite any cases, and the court has located none on its own, in which the existence of a private police force either transformed an entity that did not otherwise qualify as "an appropriate law enforcement authority" into such authority, or that supported a person's objective good faith belief that the entity was "an appropriate law enforcement authority."

Accordingly, the court concludes that Robinson's amended complaint does not plausibly plead that he had a good faith belief that the Board was "an appropriate law enforcement authority" under the Whistleblower Act, and it grants the District's motion to dismiss his Whistleblower Act claim.

*   *   *

The District's partial motion to dismiss is granted, and Robinson's Whistleblower Act claim is dismissed with prejudice.

**SO ORDERED**.

September 1, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 10 -