IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EUGENE ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-4187-D |
| VS. | § | |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by a former employee of defendant Dallas County Community College District ("District"), the District moves for summary judgment on plaintiff's sole remaining claim: that the District violated his First Amendment rights (remediable under 42 U.S.C. § 1983) when it terminated his employment as a foreign language lab coordinator and later chose not to hire him for a full-time faculty position. Concluding that a reasonable jury could not find in plaintiff's favor on this claim, the court grants the District's motion and dismisses this action by judgment filed today.

I

This case is the subject of two prior memorandum opinions and orders. *See Robinson v. Dall. Cnty. Cmty. Coll. Dist.*, 2015 WL 1879798 (N.D. Tex. Apr. 24, 2015) (Fitzwater, J.) ("*Robinson I*"); *Robinson v. Dall. Cnty. Cmty. Coll. Dist.*, 2015 WL 5123347 (N.D. Tex. Sept. 1, 2015) (Fitzwater, J.) ("*Robinson II*"). The court will therefore recount only the background facts and procedural history that are pertinent to this decision.

Plaintiff Eugene Robinson ("Robinson") worked as a foreign language lab coordinator in the World Languages department at Brookhaven College ("Brookhaven"), a college in the District.[1]  Robinson had voiced his concerns about the District and Brookhaven's spending since 2011.  In 2014 Robinson became concerned that the District, through its Early College High School program (a program where high school students receive dual credit for taking high school and college classes at Brookhaven), was spending community college district tax revenue and tuition revenue to support students of public independent school districts, rather than to benefit tuition-paying students of the District.  Because of his concerns, when two seats on the District's Board of Trustees ("Board") were up for election on May 10, 2014, Robinson supported candidates who challenged the incumbents.  Leading up to the election, Robinson engaged in various activities to support the two challengers, including publically posting on Facebook, displaying posters and handing out flyers for two days at the March 2014 Dallas Gun Show, informing his fellow professional support staff at Brookhaven about the election, emailing fellow supporters to coordinate campaign strategies, and campaigning at three different polling locations on election day.

The World Languages department's lab space was not being used to capacity in 2014, at least in part because the state had eliminated the lab requirements for foreign language

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Robinson as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

courses, which decreased the credit-hour requirement for foreign language courses from four to three hours. Robinson attended one of Brookhaven President Thomas Chesney's ("President Chesney's") regularly held open-forum meetings ("2014 Open-Forum Meeting"),[2] where Brookhaven employees could discuss issues or voice concerns, and he complained about the decision to decrease the credit-hour requirement for foreign language courses.

When Brookhaven received its budget allocation in March 2014, it was informed that its funding would be decreased by more than $1.2 million for the 2014-2015 academic year, due at least in part to the projected decrease in enrollment and a lost contract that resulted in a loss of credit and non-credit contract hours. As a result, after identifying discretionary budget cuts, President Chesney announced that Brookhaven would have to identify another $753,000 in cuts to balance the budget by May 23, 2014. President Chesney set a time line and created workgroups to identify budget cuts by mid-April. Grant Sisk ("Dean Sisk"), the Dean of Brookhaven's World Languages department (and Robinson's direct supervisor), recommended, among other things, eliminating the three language lab coordinator positions in the World Languages department, one of which Robinson held, and one lab assistant in the Communications department as part of the consolidation of the World Languages and Communications labs. Roger Bennett ("Vice President Bennett"), the Vice President of Academic Affairs and Student Success at Brookhaven, concurred with Dean Sisk's decision

---

[2]Robinson cannot recall the date of this meeting, but "[his] recollection is it was before [he] was terminated." D. App. 24.

to eliminate these positions.  And at a meeting on May 15, 2014, President Chesney and the

Brookhaven Vice Presidents discussed and approved budget cuts identified by each

department, including the elimination of the four positions recommended by Dean Sisk.

On June 4, 2014 Vice President Bennett informed Robinson that his position was

being eliminated due to "[b]udget cuts."  D. App. 15.  He delivered to Robinson a letter from

President Chesney stating that his position was being eliminated, effective August 31, 2014,

due to "the current fiscal conditions of the college and the need to reorganize the work load

in the World Languages department." *Id.* at 65.  Robinson maintains, however, that the 2014

budget situation was an excuse, not a legitimate reason, for terminating his position.[3]  Vice

President Bennett also told Robinson that he and Dean Sisk had looked for other positions

at Brookhaven for Robinson to fill, and that Robinson could apply for an open advisor

position that would pay the same as his language lab coordinator position.  Robinson was not

interested in the advisor position because he had never before worked as an advisor, and he

believed that the advisors' supervisor, Oscar Lopez, probably would not hire him due to an

earlier conflict between the two.  Robinson did not apply for the advisor position.

After learning that his position was being eliminated, Robinson began communicating

with Bill Metzger ("Metzger"), a member of the Board, to express his concerns about the

District and Brookhaven's spending.  Additionally, on June 24, 2014 Robinson sent an email

---

[3]Robinson contends that all of the other Brookhaven employees whose jobs were discontinued were hired elsewhere at Brookhaven or moved into new positions.  He also maintains that it was necessary for additional hours of pay for other employees to be incurred to cover the work that he had previously performed.

("June 2014 Email") to his fellow professional support staff employees at Brookhaven

regarding the May 2016 Board elections, which was forwarded to President Chesney and

Vice President Bennett.  Later that year, a former Brookhaven colleague, Elena Webb

("Webb"), informed Robinson that there was a possible opening for a substitute instructor

at Brookhaven, but Dean Sisk did not permit Robinson to fill this opening.  Robinson also

applied for several[4] full-time faculty positions at various campuses in the District, including

one at Brookhaven, but did not receive any job offers.

Robinson originally sued the District to recover under 42 U.S.C. § 1983 for violating

his First Amendment rights; for breach of contract; and for violating the Texas

Whistleblower Act ("Whistleblower Act").  In *Robinson I* the court granted the District's

motion to dismiss Robinson's claims for breach of contract and violation of the

Whistleblower Act, concluding that Robinson had failed to allege facts sufficient to state

plausible claims.  *See Robinson I*, 2015 WL 1879798, at *1-2.  Robinson then filed an

amended complaint, alleging that the District violated the Whistleblower Act and his First

Amendment rights (remediable under 42 U.S.C. § 1983).  In *Robinson II* the court granted

the District's motion to dismiss Robinson's Whistleblower Act claim, concluding that

Robinson had failed to allege facts sufficient to state a plausible claim.  *See Robinson II*,

2015 WL 5123347, at *5.

The District now moves for summary judgment on Robinson's First Amendment

---

[4]Robinson contends that he applied for six positions, and the District maintains that
he applied for eight positions.  The exact number is immaterial to the court's analysis.

retaliation claim (remediable under 42 U.S.C. § 1983)—his only remaining claim. Robinson opposes the motion. He maintains that his protected speech led the District, through the actions of President Chesney, Vice President Bennett, and Dean Sisk (collectively, the "Brookhaven Administrators"), to retaliate against him by eliminating his position and later choosing not to hire him for a full-time faculty position.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory when the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Robinson brings a cause of action under § 1983 alleging unlawful retaliation for the exercise of his free speech rights.

A

> To establish a First-Amendment, free-speech retaliation claim
> under § 1983, a public employee must show that (1) [he]
> suffered an adverse employment action; (2) [his] speech
> involved a matter of public concern; (3) [his] interest in
> commenting on matters of public concern outweighed the
> defendant's interest in promoting workplace efficiency; and (4)
> [his] speech was a substantial or motivating factor in the
> defendant's adverse employment action.

*Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citing *DePree v. Saunders*, 588 F.3d

282, 286-87 (5th Cir. 2009); *Click v. Copeland*, 970 F.2d 106, 113 (5th Cir. 1992)).  "If the

plaintiff makes such a showing, the employer may still avoid liability if it can 'show[] by a

preponderance of the evidence that it would have reached the same decision . . . even in the

absence of the protected conduct.'"  *Babin v. Breaux*, 587 Fed. Appx. 105, 115 (5th Cir.

2014) (per curiam) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

287 (1977)); *see also Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 39086, at *5 (N.D.

Tex. Jan. 7, 2005) (Fitzwater, J.), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).

Only the fourth element is contested.[5]  Robinson alleges that he suffered two adverse

employment actions: first, the District, through the actions of the Brookhaven

Administrators, eliminated his foreign language lab coordinator position, and, second, the

---

[5]The District asserts that Robinson's speech regarding the decrease in credit hours at
the 2014 Open-Forum Meeting is not a matter of public concern and thus cannot support his
free-speech claim.  Robinson does not respond to this assertion or contend that his speech at
the 2014 Open-Forum Meeting constituted a matter of public concern.  And he maintains that
"[o]nly the fourth element is seriously at issue."  P. Br. 14.  Accordingly, the court concludes
that Robinson does not intend to rely on his speech at the 2014 Open-Forum Meeting to
support his First Amendment retaliation claim, and that the court need not therefore address
the District's contention that this speech is not a matter of public concern.

District later chose not to hire him as a full-time faculty member.[6]  The District contends that

Robinson has presented no evidence that the decisions to eliminate his position and not to

hire him as a full-time faculty member were motivated by his exercise of protected speech,

and that, even if Robinson had such evidence, the District would have reached the same

decisions regardless of whether Robinson engaged in protected speech.

B

The court will address first Robinson's termination claim.  Robinson maintains:

> Misappropriating property tax revenue which was specifically
> intended by law to support [District] college students and
> misappropriating college student-paid tuition for the purposes of
> funding and supporting the . . . Early College High School
> Program was the central point of [his] political activities in 2014
> and was at least a substantial or motivating factor in [the
> District's] adverse employment action.

P. Br. 15.  And he alleges that "Brookhaven administration knew [he] was raising these

issues to the [Board] and to other [District] employees"; that, "as of 2014 he was also

engaging in political activity to replace board members, to try to end this"; and that "[h]e was

---

[6]In its brief, the District posits that "Robinson cannot show that any protected speech was a substantial or motivating factor in his termination or his failure to obtain a full-time faculty position—the only two adverse employment actions on which he bases his free-speech claim." D. Br. 11 (internal quotations omitted).  Robinson alleges in the fact section of his response brief—under the heading "Retaliation"—that he was not permitted to take a substitute teaching position at Brookhaven.  But Robinson does not challenge the District's position and does not assert that the District's failure to hire him as a substitute teacher constitutes an adverse employment action for purposes of his First Amendment retaliation claim.  The court therefore concludes that Robinson does not allege that his failure to obtain the substitute position constitutes an adverse employment action; rather, Robinson offers his failure to obtain a substitute position only in support of his other claims of adverse employment actions.

promoting candidates who would oppose and put a stop to Brookhaven's administration

taking money from college funds and spend[ing] it on public school students." *Id.* Robinson

also contends that

> the overwhelming evidence is that the budget situation in 2014
> did not present a legitimate reason for terminating [his] position
> so much as an excuse. All of the other Brookhaven employees
> whose jobs were discontinued were nevertheless hired elsewhere
> at the college or moved into ready-made new positions. The job
> in advising was never a serious offer at all, given previous
> conflicts between [him] and Oscar Lopez. Additional hours of
> pay for other employees had to be incurred to cover the work
> [he] had previously done.

*Id.* at 14. Finally, Robinson asserts that "the District's self-serving disavowals of any

knowledge of [his] protected speech are sufficiently countered by [his] testimony regarding

the scope and breadth of his protected political activity," and that, "[g]iven that he

communicated his concerns to many persons who were in routine meetings with all levels

of Brookhaven administrators, it is unlikely in the extreme that only one of [his] political

emails [(i.e., the June 2014 Email)] made its way to [the Brookhaven Administrators]." *Id.*[7]

---

[7]Robinson also contends that President Chesney admitted in his declaration that he
was first aware of Robinson's concerns regarding the 2014 Board elections and
Brookhaven's spending in late June, after Robinson was informed that his position was being
eliminated. Robinson maintains that "[e]ven assuming, arguendo, that Brookhaven's
administrators didn't know before June 4, 2014 of Robinson's protected speech and activity,
they knew during the final months of his employment," and "[n]o effort was made to rehire
him or to reassign him." P. Br. 19. But the fact that Brookhaven Administrators learned of
Robinson's exercise of his protected speech *after* they decided to eliminate his position and
*after* they informed him that his position was being eliminated would not permit a reasonable
jury to find that Robinson's exercise of his protected speech motivated their decision to
eliminate his position. Additionally, Robinson cites no cases, and the court is aware of none,
holding that if an employer decides to eliminate an employee's position, but then later learns

The District posits, however, that Robinson has failed to present any evidence that the Brookhaven Administrators knew of his speech regarding budget issues, misspending, or Board elections, before they decided to eliminate his position. The District also relies on evidence showing that the Brookhaven Administrators were unaware of any of Robinson's speech or actions regarding the May 2014 Board elections when they decided to eliminate his position. It points out that Robinson admitted that he never communicated with the Brookhaven Administrators about the May 2014 Board election; he has no evidence that the Brookhaven Administrators were aware of his Facebook posts or his activities at the March 2014 Dallas Gun Show; and the Brookhaven Administrators did not directly receive any of his emails regarding the May 2014 Board elections before his position was eliminated. The District also points to the Brookhaven Administrators' declarations that aver that, before eliminating Robinson's position, they were unaware of any communications by Robinson regarding the May 2014 Board elections, his participation at any gun show, or his postings on Facebook; that they were not friends with Robinson on Facebook; and that the decision to eliminate Robinson's position "was based solely on Brookhaven's financial and business needs, and had nothing at all to do with [him] personally." D. App. 103, 110, 114. Finally, the District contends that Robinson's communications with Metzger, and his June 2014 Email (which was forwarded to the Brookhaven Administrators), occurred after Robinson was notified that his position was being terminated and therefore could not have influenced

---

that the employee engaged in protected speech, the employer must rehire or reassign the employee.

the District's decision to eliminate his position.

The court agrees with the District.  It is not enough to allege that "it is unlikely in the extreme" that only one of Robinson's emails (i.e., the June 2014 Email) reached the Brookhaven Administrators, that "it was definitely possible" that Robinson's concerns were reported to one of the Brookhaven Administrators directly or indirectly, or that Robinson "absolutely believe[s]" that the Brookhaven Administrators saw his Facebook posts about the May 2014 Board elections.  *See, e.g., Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment.").  A reasonable jury could only find from the summary judgment evidence that Robinson regularly spoke out about his views on misspending and misuse of funds at Brookhaven to individuals other than the Brookhaven Administrators, and that some of these individuals had "direct access" to President Chesney, met with President Chesney "regularly," or were "in routine meetings with all levels of Brookhaven administrators."  P. Br. 5, 14.  A jury could not reasonably infer from this evidence that the individuals who heard Robinson's concerns reported his protected speech to one of the Brookhaven Administrators, or that one or more of the Brookhaven Administrators happened to overhear these individuals discussing Robinson's protected speech, and, as a result, decided to eliminate Robinson's position substantially because of his protected speech.  Robinson has failed to adduce summary judgment evidence from which a jury could reasonably infer that the Brookhaven Administrators were even

aware of his protected speech before they decided to eliminate his position, much less that

a causal connection exists between Robinson's exercise of his protected First Amendment

right and the District's decision to eliminate his position. *See Whiting v. Univ. of S. Miss.*,

451 F.3d 339, 350-51 (5th Cir. 2006) (explaining that, because defendants argued that

plaintiff had not offered any evidence that her conduct was a motivating factor in her

discharge, "[t]he question focuses on whether a causal connection existed between her

conduct and her denial of tenure," concluding that plaintiff "offer[ed] nothing but her own

beliefs as foundation for this causal chain," and holding that plaintiff failed to survive

summary judgment on her First Amendment retaliation claim).

Accordingly, the court grants the District's motion for summary judgment as to this

claim, and Robinson's First-Amendment retaliation claim based on the elimination of his

position is dismissed.

C

The court now turns to Robinson's failure to hire claim.  Robinson maintains that,

after his position was eliminated, he was denied interviews for numerous full-time faculty

positions at several campuses in the District—one of which was Brookhaven—because the

Brookhaven Administrators "blackballed [him] from future employment in the District." D.

App. 18.  Robinson avers that "he was well qualified and experienced by virtue of his

Master's Degree in English Literature and 14 years of adjunct faculty English as a Second

Language teaching experience in the District." P. Br. 12.  He asserts that "Brookhaven

denied acceptance of his application on the excuse that he was not qualified to teach the

subject that he had taught already for 14 years," and when "[he] challenged Brookhaven HR regarding his credentials, they admitted that he was qualified, and accepted his application," but "subsequently denied him an interview on April 15, 2015." *Id.* Robinson also contends that Webb informed him in late 2014 that there was a possible opening for a substitute instructor at Brookhaven, that Webb asked Dean Sisk if Robinson could fill the position, and that Dean Sisk refused to permit Robinson to substitute, stating that someone had been "turning us in to the board for shady practices." P. App. 32.

The District responds that Robinson admitted in his deposition that the Brookhaven Administrators did not work at any of the campuses within the District, other than at Brookhaven, where he applied for full-time employment, and that he has no knowledge or evidence that the Brookhaven Administrators did anything to prevent him from being hired for these positions. With respect to the one position at Brookhaven, the District contends that Vice President Bennett retired on January 31, 2015, and that Robinson admitted that President Chesney and Dean Sisk would not have been directly involved with the interviewing or hiring decision. The District also points to the Brookhaven Administrators' declarations, in which they aver that they did not know that Robinson had applied for any faculty positions at Brookhaven or elsewhere in the District after he was terminated; that they never spoke with any District employee about whether Robinson should be hired as a faculty member; and that they never made any decisions regarding hiring Robinson as a faculty member. The District further contends that Robinson's qualifications are irrelevant to the court's analysis, but, even if they were relevant, Robinson was not well qualified given that

- 13 -

he was applying for a full-time faculty position, even though he had only been a part-time faculty member for the past 14 years. The District also points out that Robinson admitted that he does not know whom the District hired over him or the credentials of those who were hired.

The court concludes that Robinson has failed to establish a genuine issue of material fact regarding whether his exercise of protected speech was a substantial or motivating factor in the District's decision not to hire him as a full-time faculty member following his termination. Even if Dean Sisk denied Robinson the substitute teaching position, Robinson admitted, "I don't think [Dean Sisk] would have been involved directly" in the interview or selection process of the full-time faculty position at Brookhaven because "[t]hat was not his division." D. App. 31. Robinson has failed to provide any evidence that would enable a reasonable jury to find that the Brookhaven Administrators played any role in the decisions not to hire him as a full-time faculty member. He does not even allege who made the decisions not to hire him at campuses other than Brookhaven, much less offer any evidence that those unknown decisionmakers were motivated by his exercise of protected speech. A jury could not reasonably infer from the mere fact that Robinson was experienced and qualified that the District chose not to hire him for a full-time faculty position substantially because he engaged in protected speech. And the only reasonable inference that can be drawn from the facts surrounding the initial denial of Robinson's application is that someone in Brookhaven's Human Resources department denied his application, mistakenly believing that he was not qualified, but then accepted his application upon learning of the mistake. A

- 14 -

reasonable jury therefore could not find that Robinson's exercise of his protected speech was a substantial or motivating factor in the District's decisions not to hire him as a full-time faculty member. *See Whiting*, 451 F.3d at 350-51; *Ramsey*, 286 F.3d at 269.

Accordingly, the court grants the District's motion for summary judgment as to this claim, and Robinson's First-Amendment retaliation claim based on the District's decisions not to hire him as a full-time faculty member is dismissed.[8]

* * *

For the reasons explained, the District's motion for summary judgment is granted, Robinson's First Amendment retaliation claim is dismissed, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED**.

May 20, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[8]The District has filed objections to some of the summary judgment evidence that Robinson offers in opposition to the District's motion. Because consideration of this evidence does not affect the court's decision, the court overrules these objections as moot.